MRM:BTK/AT
F. #2018R01102

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   MAR 18 2024   ⋆

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

HUI QIN,
      also known as "Qin Hui,"
      "Hui Quin," "Muk Lam Li"
      and "Karl,"

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

INFORMATION

Cr. No. 24-100 (JMA)
(T. 18, U.S.C., §§ 982(a)(6)(A),
982(b)(1), 1028(a)(1), 1028(b)(2)(A),
1028(c)(3)(A), 1546(a), 2 and 3551 et
seq.; T. 21, U.S.C., § 853(p); T. 52,
U.S.C., §§ 30122 and 30109(d)(1)(D)(i))

THE UNITED STATES ATTORNEY CHARGES:

## INTRODUCTION

I.    The Defendant, His Co-Conspirators, the Relevant Individuals and the Relevant Entities

    1.    The defendant HUI QIN, also known as "Qin Hui," "Hui Quin," "Muk Lam Li" and "Karl," was a citizen of the People's Republic of China ("PRC") and a Lawful Permanent Resident of the United States ("LPR"). QIN resided at a home in Old Westbury, New York and an apartment in New York, New York.

    2.    Co-conspirator 1, an individual whose identity is known to the United States Attorney, was a United States citizen. Between approximately January 2010 and December 2020, Co-conspirator 1 was married to the defendant HUI QIN.

    3.    Co-conspirator 2, an individual whose identity is known to the United States Attorney, was a PRC citizen and a conditional LPR.

4. Co-conspirator 3, an individual whose identity is known to the United States Attorney, was a PRC citizen.

5. Individual 1, an individual whose identity is known to the United States Attorney, was a United States citizen.

6. Individual 2, an individual whose identity is known to the United States Attorney, was an LPR.

7. New York City Public Official 1, an individual whose identity is known to the United States Attorney, was a candidate for a New York City-wide political office.

8. United States Representative 1, an individual whose identity is known to the United States Attorney, was a member of the United States House of Representatives who represented a Congressional District in the Eastern District of New York.

9. Candidate 1, an individual whose identity is known to the United States Attorney, was candidate for a United States of House of Representatives seat for a Congressional District in Rhode Island.

10. Committees A and B, entities the identity of which is known to the United States Attorney, coordinated campaign contributions for United States Representative 1.

11. Committee C, an entity the identity of which is known to the United States Attorney, coordinated campaign contributions for Candidate 1.

II. Federal Election Law

12. In the Federal Election Campaign Act of 1971, as amended, Title 52, United States Code, Sections 30101, et seq. (the "Election Act"), Congress prohibited certain financial influences on the election of candidates for federal office, including the House of Representatives.

13.     To prevent individuals from circumventing the Election Act, and to enable the detection of attempts to circumvent it, the Election Act prohibits a person from making a contribution in the name of another person, including giving funds to a straw donor for the purpose of having the straw donor pass the funds on to a federal candidate or to a candidate's federal campaign committee or joint fundraising committee, or to a national political party committee, and using the straw donor's name as if he/she were making the contribution, thereby concealing the true source of the money. The Election Act also prohibits any person from knowingly permitting his or her name to be used to effect the contribution of another.

14.     The Federal Election Commission ("FEC") was an agency and department of the United States with jurisdiction to enforce the limits and prohibitions of the Election Act, in part by requiring candidates, joint fundraising committees, and national party committees to file regular reports listing the sources and amounts of contributions they receive, as well as certain expenditures.

15.     Pursuant to the Election Act, Congress required registered political committees, including Committee A, Committee B, and Committee C (collectively, the "Committees"), to file periodic reports to the FEC of receipts and disbursements, identifying, among other things, the name and address of each person who made a contribution to such a committee during the relevant reporting period whose contribution or contributions had an aggregate amount of value in excess of $200 within an election cycle, together with the date and the amount of any such contribution.   These periodic reports, which were by law transmitted to the FEC and made publicly available, were intended to provide the public with a transparent record of contributions to federal political committees, and with information about the sources of funding for federal election campaigns.

16.     In 2022, and at all relevant times, the Election Act prohibited the making of a contribution in the name of another person, knowingly permitting one's name to be used to effect the contribution of another, and knowingly accepting a contribution made in the name of another. This prohibition applied to all contributions, including those made to joint fundraising committees, national political party committees, and candidate committees.

III.     Federal Immigration Law

17.     United States Citizenship and Immigration Services ("USCIS") was a component agency of the United States Department of Homeland Security. USCIS was the government agency responsible for overseeing lawful immigration into the United States.

18.     Foreign nationals who were immediate relatives of United States Citizens could obtain LPR status, commonly referred to as a "Green Card," if they met certain eligibility requirements. The term "immediate relative" referred to, among other familial relationships, the spouse of a United States Citizen or LPR.

19.     USCIS established procedures for United States Citizens and LPRs to petition for LPR status for their Foreign National Spouses. A United States Citizen Spouse was required to file a Petition for Alien Relative ("Form I-130") on behalf of the Foreign National Spouse. United States Citizen Spouses who submitted a Form I-130 certified, under penalty of perjury, that they had personally provided the information that was contained in the Form I-130 and that the information was true and correct. One portion of the Form I-130 required the United States Citizen Spouse to state whether the Foreign National Spouse had ever used "other names," including "aliases."

20.     In addition, USCIS required Foreign National Spouses seeking LPR status to file an Immigrant Visa and Alien Registration Application ("Form DS-260"). Foreign

National Spouses who submitted a Form DS-260 certified, under penalty of perjury, that they had personally provided the information that was contained in the Form DS-260 and that the information was true and correct. One portion of the Form DS-260 required the Foreign National Spouse to state whether the Foreign National Spouse had ever used "other names."

IV.     The Defendant's Straw Donor Scheme

21.     Between approximately December 2021 and December 2022, the defendant HUI QIN solicited straw donor campaign contributions for New York City Public Official 1, United States Representative 1 and Candidate 1 from Co-conspirator 2 and Co-conspirator 3.  In sum and substance, QIN stated that he would reimburse amounts of straw donor contributions made to New York City Public Official 1, United States Representative 1 and Candidate 1.

22.     Thereafter, in or about and between December 2021 and December 2022, the defendant HUI QIN, Co-Conspirator 2 and Co-conspirator 3 agreed, in substance, to find individuals to make more than $10,000 in straw donor contributions to New York City Public Official 1 and the Committees.

23.     On or about December 8, 2021, in furtherance of the straw donor scheme, Individual 1 made a $1,000 straw donor contribution on behalf of the defendant HUI QIN to New York City Public Official 1.

24.     On or about December 9, 2021 the defendant HUI QIN sent an audio message to Co-conspirator 2 in which QIN stated, in sum and substance, that he wanted Co-conspirator 2 to find straw donors to make political contributions.  In response, Co-conspirator 2 stated, in sum and substance, that Co-conspirator 2 would assist QIN in this effort and that Co-conspirator 2 anticipated being able to obtain up to $20,000 in straw donor contributions.

25.     On or about and between February 23, 2022 and March 24, 2022, in furtherance of the straw donor scheme: (i) Individual 2 made a $5,800 straw contribution on behalf of the defendant HUI QIN to Committee A; (ii) Individual 1 made a $2,900 straw contribution on QIN's behalf to Committee B; and (iii) Individual 1 made a $2,900 straw contribution on QIN's behalf to Committee C.

26.     The defendant HUI QIN concealed from the Committees, the FEC, and the public the use of straw donor contributors to make the illegal contributions at issue, thereby causing the Committees unwittingly to file reports with the FEC that were materially false, in that these reports failed to provide accurate information concerning the true contributor as required by law.    QIN also concealed the use of straw donor contributors from the campaign committee of New York City Public Official 1.

V.     The Defendant's Fraudulent LPR Application

27.     In or about 2008, a PRC government official provided the defendant HUI QIN with the alias "Muk Lam Li" (the "Li alias").    Between 2008 and 2019, QIN obtained identification documents for the Li alias, including a Hong Kong identification card, a PRC identification card and a Hong Kong passport.    The false documents that contained the Li alias displayed QIN's photograph, but contained a date of birth that was different from QIN's.

28.     In or about and between September 2017 and November 2017, the defendant HUI QIN used the Li alias to wire transfer approximately $5 million from bank accounts based in Hong Kong to bank accounts based in the United States, including a bank account controlled by Co-conspirator 1.    In or about September 2017, a portion of the $5 million that QIN transferred to Co-conspirator 1 was used to purchase a luxury Manhattan apartment, where QIN resided.    By September 2017, Co-conspirator 1 knew that QIN used the Li alias.

29.    In or about March 2018, the defendant HUI QIN agreed with Co-conspirator 1 that Co-conspirator 1 would sign, under penalty of perjury, a Form I-130 that stated, in substance, that QIN had never used "other names," or "aliases." In connection with that agreement, on or about March 3, 2018, Co-conspirator 1 signed, under penalty of perjury, a Form I-130 stating that QIN had never used "other names," including any "aliases," and caused the submission of that false Form I-130 to USCIS, despite QIN and Co-conspirator 1 knowing that QIN had used another name, to wit: the Li alias, before March 3, 2018. In connection with this agreement, on or about April 4, 2019, QIN submitted a Form DS-260 to USCIS, under penalty of perjury, in which QIN falsely stated that he had not used "other names."

30.    In or about June 2019, based upon the false Forms I-130 and DS-260 that the defendant HUI QIN and Co-conspirator 1 submitted under penalty of perjury, and other documents, USCIS granted QIN LPR status.

VI.    The Defendant's Fraudulent Production of a Florida Driver's License

31.    On or about December 20, 2020, the defendant HUI QIN travelled on an interstate flight from LaGuardia Airport in Queens, New York to Miami, Florida. The purpose of the defendant's interstate travel to Florida was to obtain a fraudulent Florida Driver's License from the Florida Department of Highway Safety and Motor Vehicles ("FLHSMV").

32.    To obtain a Florida Driver's License, the FLHSMV required applicants to provide proof of Florida residency. Such proof included a bank statement or a credit card statement, bearing a Florida address. Further, the FLHSMV required applicants to sign a statement, "under penalty of perjury," attesting that "the information" that the applicant provided to the FLHSMV in connection with a Driver's License application was "true and correct."

33.     On or about December 21, 2020, after travelling on an interstate flight from Queens, New York to Florida, the defendant HUI QIN applied to the FLHSMV for a Florida Driver's License.   In his application, QIN stated that his name was "HUI QIN" and that he resided at an address in Miami, Florida (the "Miami address").   In connection with the application, QIN provided the FLHSMV with documents purporting to be statements from Bank of America and Macy's, Inc. that were issued to "HUI QUIN" at the Miami address.   In truth and in fact, QIN well knew and believed that he never resided at the Miami address and that the documents QIN provided to the FLHSMV were false and were intended to fraudulently induce the FLHSMV to issue QIN a Florida Driver's License.   After providing the FLHSMV with the fraudulent documents, the QIN signed and submitted the required statement which falsely affirmed that "the information" that he provided to the FLHSMV in connection with his application for a Florida Driver's License was "true and correct."   On or about December 21, 2020, the FLHSMV issued a Florida Driver's License to QIN.   Thereafter, QIN returned to New York from Florida on an interstate flight.

## COUNT ONE
(Contributions in the Names of Others)

34.     The allegations contained in paragraphs one through 33 are realleged and incorporated as if fully set forth in this paragraph.

35.     In about and between February 2022 and March 2022, both dates being approximate and inclusive within the Eastern District of New York and elsewhere, the defendant HUI QIN, also known as "Qin Hui," "Hui Quin," "Muk Lam Li" and "Karl," together with

others, knowingly and willfully made contributions to the Committees in the names of other persons, aggregating more than $10,000 and less than $25,000, in a calendar year.

(Title 52, United States Code, Sections 30122 and 30109(d)(1)(D)(i); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT TWO
### (Immigration Fraud)

36. The allegations contained in paragraphs one through 33 are realleged and incorporated as if fully set forth in this paragraph.

37. On or about April 4, 2019, within the Eastern District of New York and elsewhere, the defendant HUI QIN, also known as "Qin Hui," "Hui Quin," "Muk Lam Li" and "Karl," together with others, did knowingly and intentionally subscribe as true, under penalty of perjury under Title 28, United States Code, Section 1746, one or more false statements with respect to one or more material facts, to wit: statements concerning QIN's use of "other names," including any "aliases," before April 4, 2019, in one or more applications, affidavits and other documents required by the immigration laws and regulations prescribed thereunder, to wit: a DS-260 and supporting documents, and to knowingly present such applications, affidavits and other documents that contained false statements and that failed to contain any reasonable basis in law and fact.

(Title 18, United States Code, Sections 1546(a), 2 and 3551 et seq.)

## COUNT THREE
### (Production of False Identification Document)

38. The allegations contained in paragraph one through 33 are realleged and incorporated as if fully set forth in this paragraph.

39. On or about December 21, 2020, within the Eastern District of New York and elsewhere, the defendant HUI QIN, also known as "Qin Hui," "Hui Quin," "Muk Lam Li"

and "Karl," together with others, did knowingly and intentionally and without lawful authority produce a false identification document, to wit: a false Florida Driver's License, in and in a manner affecting interstate and foreign commerce.

(Title 18, United States Code, Sections 1028(a)(1), 1028(b)(2)(A), 1028(c)(3)(A), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS TWO AND THREE

40. The United States hereby gives notice to the defendant that, upon his conviction of the offenses charged in Counts Two and Three, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(6)(A), which requires the forfeiture of: (a) any conveyance, including any vessel, vehicle, or aircraft used in the commission of such offenses; and (b) any property, real or personal that: (i) constitutes, or is derived from or is traceable to, the proceeds obtained directly or indirectly from the commission of such offenses; and (ii) is used to facilitate, or is intended to be used to facilitate, the commission of such offenses.

41. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

       (a)    cannot be located upon the exercise of due diligence;

       (b)    has been transferred or sold to, or deposited with, a third party;

       (c)    has been placed beyond the jurisdiction of the court;

       (d)    has been substantially diminished in value; or

       (e)    has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(6)(A) and 982(b)(1); Title 21, United States Code, Section 853(p))

*By Carolyn Pokorny, Assistant U.S. Attorney*

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.# 2018R01102
FORM DBD-34
JUN. 85

No. _____

## UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

HUI QIN, also known as "Qin Hui," "Hui Quin," "Muk Lam Li"
and "Karl,"

Defendant.

## INFORMATION

(T. 18, U.S.C., §§ 982(a)(6)(A), 982(b)(1), 1028(a)(1), 1028(b)(2)(A), 1028(c)(3)(A),
1546(a), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 52, U.S.C., §§ 30122 and
30109(d)(1)(D)(i))

*A true bill.*

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –
*Clerk*

*Bail, $* _____

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

*Bradley T. King and Adam Toporovsky, Assistant U.S. Attorneys*
*(631) 715-7900*